## JAMES MALONEY V. CLARK & CO.

NEGLIGENCE—FALSE PERSONATION. *Innocent parties; who to bear loss.* A party employed an attorney to write a letter for him, to a person whom he claimed as his brother, and asked of such person that he would send money to the attorney for the use of such party; in answer to such letter, the person so applied to sent a draft or drafts to, and they were received by, said attorney, for the purpose of delivery to his employer, which drafts were made payable to the order of such employer, by the name under which he had been known to his said attorney, and in which the application for money had been made; and said drafts were so sent by such person, under the belief that he was sending money to his brother for his use, which it was his intention to do; but in truth and in fact such party making.application for money, was not his brother, nor had any claims whatever upon him. Such drafts were given into the hands of said party to whose order they were so payable, and were negotiated by him to, and purchased and paid for in money by bankers, in due course of their business as such bankers, and upon identification of the party holding them, by the said attorney, who was well known to them; and all the parties, excepting the party who received the money, acted in good faith. *Held*, in such case:

1. That said attorney was, under the circumstances, the agent for the person sending the drafts; and a delivery thereof by him to the party who employed him to write for the money was with like effect as if such person had himself made the delivery.

2. The mistake made, by which the money went to a party other than he intended and supposed it was going to, was the mistake of the person sending the money; and he cannot recover his loss incurred by reason thereof, from any party standing in the relation to the transaction which was occupied by the bankers, who purchased the drafts.

3. The bankers in purchasing the drafts, under the circumstances surrounding such case, were guilty of no negligence.

4. Such a case is in no way similar to one where a draft falls into the hands of a person not entitled thereto, either by theft or accident, for which the party sending it is not responsible.

### *Error from Leavenworth District Court.*

ACTION against defendants, a banking firm of the city of Leavenworth, for money had and received. *James Maloney*, the plaintiff, was, during the year 1866, a resident of the city of Cincinnati, Ohio; he had a brother by the name of Daniel Maloney, residing in the city of Leavenworth, in this State. About the first day of August, 1866, plaintiff received a letter, purporting to come from his said brother Daniel, at Leavenworth,

requesting plaintiff to send the said Daniel all the money that he could spare, and that it be sent by draft on New York, enclosed to A. F. Callahan, Leavenworth. Plaintiff, believing said letter was from his brother Daniel, procured a draft on New York for $300, payable to "the order of Daniel Maloney," and mailed the same to Callahan, with instructions to hand draft to said Daniel Maloney. Eight days afterward plaintiff received a telegram, purporting to come from his said brother at Leavenworth, requesting plaintiff to send $200 more, and in the same manner as the first. In compliance, plaintiff procured a draft on New York for $200, payable to order of said Daniel Maloney, and forwarded the same to said Callahan, to be delivered to the said Daniel. Both drafts were delivered by Callahan to the man who caused said letter to be written, and said despatch to be sent, and who represented himself as the Daniel Maloney entitled to receive them, and the man so representing himself indorsed said drafts, and received the money of said defendants at their banking-house in Leavenworth; but in fact, such person was not the brother of said plaintiff. Plaintiff's brother was wholly ignorant of the proceedings, until shortly before this suit was brought.

A. F. Callahan testified that he was an attorney at law; that it was his practice to make collections, etc.; that he was employed by one Daniel Maloney to write to one James Maloney, Cincinnati, for some money for said Daniel, who represented that said James was his brother, and had promised to furnish him money. Said party was at witness' office several times, and personally received the drafts, and the money paid thereon by the defendants. Witness identified him to defendants at time of payment; had not seen him since.

The court gave judgment for the defendants, and the plaintiff brings the cause to this court.

*Byron Sherry*, for plaintiff in errror:

1. Banks are held to the exercise of great diligence, and it was the duty of the bank to know, or to ascertain by proof of identification, the party entitled to receive the money. 5 B. & C., 750; 5 Barn. & Ad., 911; 37 Eng. Com. Law, 232; 18 Conn., 108; 4 Dallas, 234; 17 Mass., 33; 10 Vermont, 141; 16 Barb., 584; 2 Johns., 455.

Bank is liable to payer of check or bill of exchange made payable to certain order, if paid on forged indorsement. 2 Parsons Notes, 395; 1 Hill, 289; 31 Missouri, 224: 3 Barn. & Cress., 428.

If a note or bill be indorsed by a person who is not the payee, but bears the same name, such indorsement, if not innocent, is a forgery, and passes no title. 2 Parsons Notes, 4; *Meade v. Young*, 4 T. R., 28; 17 N. Y., 205; 11 How., 183. And the payment of a forged note by a bank, is negligence, 3 Burr., 1357.

2. Money paid by one party to another through a mutual mistake of facts with respect to which both are bound to inquire, may be recovered back. 1 Hill., 287; 4 Ohio St., 628.

If there has been negligence in both parties, the plaintiff may be entitled to recover. 3 Ohio St., 172; 19 Conn., 566; 1 Denio, 91.

*J. L. Pendery, C. W. Helm,* and *Hurd & Stillings,* for defendants in error:

1. The well known principle of law, that " where one of two innocent parties must suffer by the wrong of a third party, he who enabled such party to do the wrong,

must sustain the loss," must determine this case. The Daniel Maloney who received the draft no doubt used fraudulent means to that end; but the draft was nevertheless sent to him for his use. That James Maloney supposed he was sending it to his brother was his own mistake, and the consequence of such mistake should be his own misfortune, and not that of others.

When James Maloney authorized Callahan to deliver the drafts to Daniel Maloney, he made Callahan his agent for that purpose; and Callahan's mistake is just the same as if James Maloney had been present himself, and made the mistake as to the person to whom the drafts should be delivered as the rightful owner. Story on Agency, §§ 73, 127, 129, 130, 134, 135, 139.

The very man who wrote for the drafts got them, and negotiated them. Plaintiff's negligence in thus putting it in the power of a third party to practice the imposition, estops him from claiming anything from the parties so imposed on. *Cooks v. Masterman*, 9 Barn. & Cress., 902; *Yates v. Winstone*, 1 Mass., 66; 1 Parsons on Notes, 109, *note*; id., 275.

2. The case can in no view be assimilated to one where a draft is sent by letter which by accident falls into the hands of the wrong person, nor of that where a draft is stolen. In such case there is no fault in the party injured, nor any negligence on his part.

The opinion of the court was delivered by

SAFFORD, J.: The issues in this case were tried by the district court, upon an agreed statement of facts, and a judgment rendered for the defendants here and below. It is claimed for the plaintiff in error, that such judgment was erroneous, for the reason that it is not sustained by the facts so agreed upon by the parties, and is

contrary to the law which is applicable thereto. An examination of the whole case, as presented by the record, has led this court to a different conclusion, and such as will require an affirmance of the decision made.

It appears that James Maloney was induced to send drafts to the amount of five hundred dollars, to A. F. Callahan, for the benefit of a person who had no claims whatever upon him, and under the belief that such person was his brother Daniel Maloney, when in fact his said brother was entirely ignorant of the whole transaction. But it is equally clear that these defendants were in nowise connected with or responsible for this mistake on the part of James Maloney. The real Daniel Maloney was *unknown* to A. F. Callahan, and to the defendants; while the person who received the money was known to Callahan by that name, and under that name employed Callahan to write for and procure the money to be sent to himself. Callahan acting in entire good faith, wrote for the money, as requested thereto by his employer, and in due time it was received by him, and in response to his application, on behalf of such employer. Having so received the money, he delivered it, or rather the drafts representing it, to the man claiming to be Daniel Maloney, and *known to him* by that name. Such drafts were then purchased by these defendants in due course of their business, as bankers, and upon identification of the person to whose order they were made payable, to-wit, "Daniel Maloney," by said A. F. Callahan, who was well known to them. Under the circumstances Callahan could not have done otherwise than he did; and further than this, he was authorized thereto by the sender of the drafts. For the purpose of such delivery to the person for whom

1. AGENCY. Effect of agent's acts in case of mutual mistake.

he had procured them to be sent to him, Callahan was the *agent* of James Maloney; and a delivery by him was with like effect as it would have been had James Maloney himself been present.

It certainly seems to us that the action of Clark & Co., in the premises, was characterized by all necessary caution and prudence; and least of all does the slightest negligence on their part seem to have intervened. The whole transaction, so far as the knowledge of Callahan, and Clark & Co., and their connection therewith, is concerned, was one of the simplest and most common; and they all did what every business man in a like situation would have been sure to do. It is true they were to a certain extent imposed upon, being deceived as to the person with whom they were dealing; but not through any fault or negligence of their own—but rather through the mistake of James Maloney, brought about by the dishonesty of the party claiming to be his brother.

*2. Mistake of fact, in giving authority, does not change liability;*

*— and it is not negligence for a banker to purchase drafts in due course of business.*

It is to be remarked in this connection, that this transaction is in no way similar to one where a draft, either by theft or by accident, falls into the hands of a person *not entitled thereto*, for which the party sending such draft is not responsible. In such a case the injured party, being in no fault himself, might be entitled to relief as against a purchaser of the stolen draft. But here the case is different. The drafts were not stolen, but they were sent to Callahan by the plaintiff James Maloney, to be delivered by said Callahan to the very man who received them, and who negotiated them. The mistake, however induced, was the mistake of James Maloney; and in no view of the case does it seem to us that he ought to be allowed to recover his loss in

*4. Right to recover for lost drafts, in certain cases.*

consequence thereof from parties standing in the relation in which Clark & Co. appear.

The judgment will be affirmed.

All the Justices concurring.