THE EMPORIA NATIONAL BANK v. S. L. SHOTWELL.

PERSON PERSONATING ANOTHER; *Indorsement of Draft; Mistake; Liability.*
Daniel Guernsey was the owner of a quarter-section of land in Butler county, in this state; he formerly resided in Butler county, but at the time of the transactions hereinafter stated lived in Iowa; an unknown person, assuming the name of Daniel Guernsey, obtained a loan from S. upon the Guernsey land, and executed his notes and mortgages for the loan in the name of Daniel Guernsey; S. sent the amount of the loan by draft by mail to the person executing the notes and mortgages, who said his name was Daniel Guernsey and whose name he then believed to be Daniel Guernsey, and made, the draft payable to the order of Daniel Guernsey, intending thereby the person to whom he sent the draft. A bank received this draft for a valuable consideration, in good faith, from the same person to whom it was sent, whom the bank believed to be Daniel Guernsey, and who indorsed the draft by that name. *Held*, Although S. was mistaken and deceived in the transactions, the person he dealt with was the person intended by him as the payee of the draft, designated by the name that he assumed in obtaining the loan, and that his indorsement of it was the indorsement of the payee of the draft by that name; and further *held*, under all the circumstances of this case, as the bank took the draft in good faith and for value, S. cannot recover his loss from the bank.

*Error from Butler District Court.*

ACTION commenced September 8, 1882, by *S. L. Shotwell* against *The Emporia National Bank*, to recover $840, with interest. On October 1, 1883, the plaintiff filed in said cause his amended petition, in words and figures following, to wit, (title of cause and exhibits omitted:)

"Now comes said plaintiff, and for a cause of action against said defendant says:

" 1. Defendant is a corporation duly incorporated under the laws of the United States, and doing business as a banking institution in said state.

" 2. Heretofore, to wit, on the 11th day of November, 1881, the Exchange Bank of El Dorado, a corporation duly incorporated under the laws of the state of Kansas, and doing business as a banking institution in the city of El Dorado, Butler county aforesaid, for a valuable consideration to it paid by this

plaintiff, issued to him a bill of exchange or draft for the sum of $840, payable to the order of Daniel Guernsey and drawn on the defendant, where the said Exchange Bank had funds to meet that and similar drafts, a copy of which draft is hereto attached, marked 'Exhibit A,' and made a part hereof.

"3. Said draft was by said Exchange Bank delivered to this plaintiff, and by him forwarded in a letter to said Daniel Guernsey, by mail, at Florence, Kansas.

"4. One Noe and W. Hod. Harvey obtained possession of said letter and draft without authority, and forged the indorsement of Daniel Guernsey on the back of said draft, and then presented the same to defendant, and the same was paid, to wit, the sum of $840, by defendant to said Noe and Harvey, and that amount charged to the said Exchange Bank.

"5. Said Exchange Bank and said Daniel Guernsey have duly transferred and assigned all their interest in and to said draft and the money due thereon, and all rights of action arising therefrom or by reason of all the matters alleged in this petition against defendant to this plaintiff; copies of which are hereto attached and made a part hereof, marked 'B' and 'C.'

"6. Defendant, though often requested, has refused to pay to this plaintiff said draft or said money, or any part thereof, but on the contrary, has charged the same to said Exchange Bank and refused to pay to said Exchange Bank the balance due it without first deducting therefrom the amount of said draft.

"7. By reason of the premises there is due, owing and unpaid from defendant to plaintiff the sum of $840, with 7 per cent. interest from November 12, 1881.

"Wherefore, he asks judgment against defendant for the sum of $840, with 7 per cent. interest from November 12, 1881, and costs of suit."

On September 23, 1884, the defendant, having first obtained leave so to do, filed its amended answer. The plaintiff filed his reply, and at the September Term of the court for 1884 the cause was tried by the court, a jury being waived. Upon the attempt of the plaintiff to introduce his evidence, the defendant objected, upon the ground that the petition did not state facts sufficient to constitute any cause of action; and after the plaintiff had rested his case, the defendant filed its demurrer to the evidence, which demurrer was considered by the court, and overruled. Upon the close of the evidence, and

after the argument of counsel, the court made and filed its findings of fact, as follows:

"1. The Exchange Bank of El Dorado, being a banking corporation doing business at El Dorado, in Butler county, Kansas, on the tenth day of November, 1881, made its draft or check upon the defendant bank, payable at sight, to the order of Daniel Guernsey, for the sum of eight hundred and forty dollars.

"2. At the time of issuing said draft, and at all times thereafter, until the commencement of this action, the said Exchange Bank of El Dorado, had on deposit with the defendant bank, subject to checks, more than the amount of said draft.

"3. The said draft was intended for a certain Daniel Guernsey, who was then a real person and the owner of the N.W. ¼ of section 12, township 29 south, range 5 east, in Butler county, Kansas.

"4. The said Exchange Bank delivered said draft to S. L. Shotwell, who delivered the same to C. E. Lobdell, who deposited the same in the U. S. post office at El Dorado, Kansas, in an envelope addressed to Daniel Guernsey, at Florence, Kansas, postage prepaid.

"5. Some unknown person wrongfully obtained possession of said draft and forged the signature of Daniel Guernsey to an indorsement of said draft in blank upon the back thereof.

"6. The said draft never came into the actual possession of said Daniel Guernsey, and he never signed any indorsement thereof, and never authorized the same to be done, nor disposed of the same, except as hereinafter stated.

"7. The unknown person who so forged the signature of Daniel Guernsey to the indorsement upon said draft presented the draft to the defendant bank for payment, and the defendant bank thereupon paid said unknown person for and upon and in payment of said draft the sum of eight hundred and forty dollars.

"8. The person to whom the defendant bank paid the amount of said draft was not the owner thereof, or of any interest therein, and had no authority to collect the same.

"9. Upon the payment of said draft the defendant bank charged the amount thereof to the said Exchange Bank of El Dorado in its account as such depositor, and continues to so charge the same.

"10. Afterward, on the 1st day of March, 1882, the said Exchange Bank of El Dorado demanded of the defendant bank

that the said sum so charged on account of said draft be restored and allowed as a credit in the deposit account of said Exchange Bank, which the defendant bank refused.

"11. Afterward, the said Daniel Guernsey assigned the said draft and the right to receive payment thereof, and all his right growing out of the issuance of said draft, to the plaintiff, which assignment was in writing, and is the assignment, a copy of which is attached to the plaintiff's petition, marked 'Exhibit C.'

"12. Afterward, the Exchange Bank of El Dorado executed and delivered to the plaintiff an assignment, a copy of which is attached to the plaintiff's petition, marked 'Exhibit B,' that it was the intention of the Exchange Bank of El Dorado, by said writing, to transfer to the plaintiff the sum of money and the right to receive and recover the same so charged by the defendant bank to the said Exchange Bank of El Dorado, in the account of said Exchange Bank of El Dorado, as such depositor with the defendant bank.

"13. No part of said money has ever been repaid, or in anywise allowed, by the defendant bank."

Thereupon the defendant presented and asked the court to make the following additional findings of fact, which the court complied with:

"1. During the year 1881, the plaintiff was engaged in the business of loaning money for a firm in Kansas City, Mo., known as Underwood, Clark & Co.; during this year one C. E. Lobdell, a resident of El Dorado, Kansas, had arrangements with the plaintiff whereby Lobdell was to receive applications for loans upon real estate and give them to the plaintiff, who would forward them to Underwood, Clark & Co., and upon the approval of such applications and the making of the loans, the plaintiff divided the commissions he received on such loans with Lobdell.

"A man by the name of DeTalent, of the firm of DeTalent & Harvey, real estate agents at El Dorado, was appointed inspector by the plaintiff to inspect the real estate on which loans were applied for; the duty of the inspector was to examine the real estate, make report upon its value, its improvements, and the financial standing and condition of the applicant; the duties of Mr. DeTalent were frequently performed by his partner, W. Hod. Harvey, who would make the report and Mr. DeTalent would sign it; the plaintiff and Mr. Lobdell both were aware that Mr. Harvey performed

these duties and made these reports at different times and upon different occasions.

"2. During the year 1881, a man by the name of Daniel Guernsey owned the N.W. quarter of section 12, township 29, range 5, Butler county, Kansas; this Daniel Guernsey had formerly resided upon this land, but during this year was a resident of the state of Iowa, and the plaintiff had formerly resided in the neighborhood where this land is situated, and knew of Daniel Guernsey and of his owning this land, by reputation and report.

"3. Some time prior to the 11th of November, 1881, C. E. Lobdell received a letter from a man purporting to have been written at Wichita, Kas., in which the man writing it stated that he owned the real estate belonging to Daniel Guernsey, and that he desired to obtain a loan upon it, stating the amount. This letter was signed in the name of Daniel Guernsey. Upon receipt of this letter Mr. Lobdell answered it, inclosing a blank application for a loan; afterward, Mr. Lobdell received another letter, dated at Wichita, written by the same man, returning the application for a loan, filled out, and signed in the name of Daniel Guernsey. This letter was also signed in the same name. The writer of the letter requested Mr. Lobdell, in case the application was accepted, to send the notes and mortgages to him at Florence, Kansas, to be executed by him there.

"4. Upon receipt of this letter and application, Mr. Lobdell gave the application to Mr. DeTalent, to have the land inspected and a report made upon the application; afterward the report was made, written out by Mr. Harvey and signed by Mr. DeTalent; upon receiving this report, Mr. Lobdell gave it and the application for the loan to the plaintiff, who forwarded these papers to Underwood, Clark & Co.

"5. Underwood, Clark & Co. returned to the plaintiff two mortgages and two sets of notes filled out, for the purpose of having them executed; one mortgage was to Underwood, Clark & Co., to secure a sum of $127.90 according to the conditions of five promissory notes; the other mortgage was to the Scottish American Mortgage Co. (limited), to secure the sum of $850 according to the conditions of one note; each of these mortgages described the land owned by Daniel Guernsey, and in each of them the name of the maker was inserted as Daniel Guernsey.

"6. The plaintiff, on receipt of these two mortgages and the notes which they were to secure, gave them to Mr. Lob-

dell for the purpose of having the person who made the application execute them, and Mr. Lobdell forwarded the mortgages and the notes by mail, in a letter addressed to Daniel Guernsey, Florence, Kansas; afterward the mortgages and the notes were returned, signed by the same person who made the application, and signed in the name of Daniel Guernsey, and each of the mortgages had an acknowledgment of the execution, taken before a notary public at Florence, Kansas; accompanying the notes and mortgages was a request that the notes and mortgages should be sent to him by Adams Express, directed to him at Florence, Kansas; the signatures to the application, to each note and to each mortgage, were written by the same person, and the name written was that of Daniel Guernsey.

"7. Upon the receipt of the notes and mortgages, Mr. Lobdell took the mortgages to the register's office to have them recorded, and delivered the notes to the plaintiff; the plaintiff forwarded the notes to Underwood, Clark & Co., and received from them the amount of the loan, which he caused to be placed to his credit with the Exchange Bank of El Dorado.

"8. Mr. Lobdell informed the plaintiff that the party executing the notes and mortgages desired to have the currency sent to him by express to his address at Florence, Kansas; the plaintiff, preferring to send the money in a draft or check, procured a check to be issued to him by the Exchange Bank, a copy of which said check is attached to plaintiff's petition, as 'Exhibit A.' This check when received by the plaintiff was by him delivered to Mr. Lobdell, to be sent to the party executing the notes and mortgages, under the belief that such party was the Daniel Guernsey who owned the real estate described in the mortgages. This belief was induced by the letters written by the party, and by the application which he had made.

"9. Both the plaintiff and Mr. Lobdell acted, in making such loan, under the belief that they were making it to the Daniel Guernsey, the owner of the land described in the mortgages.

"10. The draft shown by 'Exhibit A' to plaintiff's petition was sent by Mr. Lobdell to the address of Daniel Guernsey, at Florence, Kansas, through the U. S. mail; in sending this draft to Daniel Guernsey at Florence, Mr. Lobdell, under the belief that the party executing the notes and mortgages was the Daniel Guernsey who owned the land described in such

mortgages, intended that the party who had executed the notes and mortgages should never receive such checks.

"11. Neither the plaintiff nor Mr. Lobdell, up to the time for sending such check for such loan, had ever seen either the person who executed the notes and mortgages, or the real Daniel Guernsey.

"12. The only inquiry made by either the plaintiff or Mr. Lobdell, in reference to the party making the application, previous to sending the check, was inquiry made of Hod. Harvey, who claimed to know Mr. Guernsey, and of E. E. Harvey, register of deeds of Butler county, Kansas.

"13. The person who made the application for this loan, and who executed the notes and mortgages, was not the Daniel Guernsey who owned the land described in such mortgages.

"14. The same person who made the application for the loan, and who executed the notes and mortgages, got possession of the letter inclosing the check, and thereby obtained possession of the check.

"15. After the person had obtained possession of this check, he went to Emporia, Kas., accompanied by Hod. Harvey, for the purpose of procuring from the defendant the money upon such check.

"16. On arriving at Emporia, the person having possession of this check presented it to the defendant bank for the purpose of having it cashed, stating to the cashier at the time of such presentation that he was Daniel Guernsey, who was named in said check as the payee thereof, and that the check had been sent to him for a loan which he had negotiated, and for which he had executed notes and mortgages, which had been delivered to the plaintiff; the cashier of the bank being unacquainted with this party, required him to be identified before he would consent to pay the check; a person who was known to the cashier identified Hod. Harvey, who was with the party holding the check, as a man whom he was acquainted with, and whose name was Harvey, and who resided in Butler county, Kansas. Upon this identification, Hod. Harvey stated to the cashier that the man bearing this check was the Daniel Guernsey who was named as payee in the check; that he knew that fact from having knowledge of the fact that this man had executed these notes and these mortgages and delivered them to the plaintiff for such loan. Upon such identification and without any further knowledge as to the facts in the case, the cashier of defendant bank paid to the party holding this

check the amount of $840; at the time of the payment of the amount of this check, to wit, on November 14, 1881, the amount paid was charged up to the Exchange Bank of El Dorado, which had issued the check, in the account kept by such Exchange Bank with the Emporia National Bank.

"17. At the time of presentation and payment of this check, the Exchange Bank of El Dorado had to its credit with the defendant bank more than $2,000, and the charging of the amount of this check to the Exchange Bank by the defendant bank still left the defendant bank owing the Exchange Bank a large amount of money in the account kept by the defendant with the Exchange Bank.

"18. At the time of the payment of this check to the holder of it, the cashier of defendant bank required such holder to indorse his name upon the back of such check before it was paid; thereupon the party in whose possession this check was, wrote across the back of it the name of Daniel Guernsey; the name of Daniel Guernsey upon the back of this check was written by the same party who signed the name of Daniel Guernsey to the application for a loan, to the notes, and to the mortgages.

"19. The real name of the party who executed these notes and mortgages and indorsed this draft is unknown, except as it may or may not be shown by his execution of such notes and mortgages and indorsement of the draft, and the statement made by him and Harvey to the cashier of defendant bank.

"20. Defendant bank has never credited in the account kept by it with the Exchange Bank the amount of this check, which it charged up in such account to the Exchange Bank on the 14th day of November, 1881.

"21. The defendant bank returned this check to the Exchange Bank in December, with a statement showing the account between the two banks for the month of November, 1881.

"22. The first knowledge the plaintiff had that the party who had received this check and got the loan was not the Daniel Guernsey who owned the land described in the mortgage, was in January, 1882, and as soon as plaintiff received information of such fact, he at once notified defendant bank.

"23. In the month of February, 1882, the plaintiff was the cashier of the Exchange Bank of El Dorado, and as such cashier he went to Emporia to see the managing officer of defendant bank and demand of him that the amount of this check,

which had been charged up to the Exchange Bank, be credited back to it so that the account would stand the same as though such charge had not been made, which request the defendant bank refused to comply with, and it has never at any time credited the amount of this check to the Exchange Bank.

"24. The indorsement made upon the back of this check of the name of Daniel Guernsey, was made without the knowledge or authority of the Daniel Guernsey who owned the real estate described in the mortgages.

"25. The Daniel Guernsey who owned the real estate described in the mortgages knew nothing about this application for a loan, or the making or execution of the notes and mortgages, and the notes and mortgages were executed without his consent.

"26. The Daniel Guernsey who owned the real estate described in the mortgages was not in the state of Kansas at any time during the negotiation for such loan or the making of it.

"27. The plaintiff knew that Mr. Lobdell when he received this check would send it by mail addressed to Daniel Guernsey at Florence, Kansas, in accordance with the request made by the party executing the notes and mortgages, to have the money for such loan sent to him at Florence, Kansas.

"28. The defendant bank in paying the amount of this check to the person holding the same, did so in good faith, under the belief that he was the party to whom such payment should be made, upon the indorsement made by him upon the back of said check.

"29. In the year 1883, each of said mortgages was duly released on the records in Butler county, Kansas, by the mortgagees named in such mortgages.

"30. In the spring of 1882, previous to the commencement of this action, the plaintiff paid to Underwood, Clark & Co. the amount paid by them to him for such loan.

"31. The Exchange Bank executed to the plaintiff the assignment shown by 'Exhibit B,' attached to plaintiff's petition at the time of the date thereof.

"32. The Daniel Guernsey who owns the land described in the mortgages lived at Centerville, Iowa, during the time of all of these proceedings, and was in business then as a clothing merchant, and his name in full is Daniel Guernsey.

"33. The defendant has never accepted such check or draft, or agreed to pay the same, except only as it took the same from the possession of the holder of it, and paid the amount of it to him.

"34. Since the receipt of the check, shown by 'Exhibit A,' by the Exchange Bank of El Dorado from the defendant bank, the same has never been presented to the defendant bank by the plaintiff, or anyone else, and no demand was ever made upon the defendant bank by the plaintiff in his individual capacity for the payment of such check, and the only demand ever made upon defendant bank by the plaintiff for the Exchange Bank, was the demand above stated."

Thereon the court made the following conclusions of law:

"1. The plaintiff is entitled to recover of the defendant bank the amount of the draft mentioned in the findings of fact, by virtue of the assignment to him executed by Daniel Guernsey.

"2. The plaintiff is entitled to recover of the defendant bank the amount of the said charge mentioned in the findings of fact, by virtue of said transfer and assignment to him, executed by the Exchange Bank of El Dorado.

"3. The plaintiff was not guilty of negligence creating any cause of action or defense against him in favor of the defendant.

"4. Upon the facts, the plaintiff is entitled to recover of the defendant the sum of eight hundred and forty dollars, and interest thereon from the first day of June, 1882, at the rate of 7 per cent. per annum."

On September 30, 1884, the defendant filed its motion for judgment upon the findings of fact, notwithstanding the conclusions of law. This motion was overruled. The defendant then filed its motion for a new trial, which was also overruled. Judgment was entered in favor of the plaintiff and against the defendant for the sum of $973.30, together with all costs. The defendant excepted to the rulings and judgment of the court, and brings the case here.

*C. N. Sterry*, for plaintiff in error.

*A. L. Redden*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: The issues formed by the pleadings in this case were submitted to the court, a jury being waived. At the commencement of the trial the National Bank of Emporia

24—35 KAS.

requested that the court find the facts specifically, and state its conclusions of law thereon. The bank did not consider the findings of fact first made by the court sufficient upon the questions of law involved in the trial, and therefore asked the court to make additional findings of fact. The court complied with this request. We therefore must consider all of the special findings of fact made by the court, and such findings of fact must be made to harmonize with each other, if possible, and are conclusive upon all disputed and doubtful questions.

The actual name of the person who executed the notes and mortgages and indorsed the draft issued to him by the Exchange Bank of El Dorado is not disclosed in the findings of the trial court; yet, it appears therefrom that such person applied for the loan from Shotwell in the name of Daniel Guernsey; that in his letters he assumed the name of Daniel Guernsey; that he signed the notes and mortgages as Daniel Guernsey; that he indorsed the draft as Daniel Guernsey; that he stated to the cashier of the National Bank at Emporia his name was Daniel Guernsey; and that Harvey, who identified him at the bank, also stated to the cashier that the name of the holder of the draft was Daniel Guernsey. It also appears that Harvey, who inspected the Guernsey land upon the application for the loan and identified the payee of the draft at the bank, claimed to know Daniel Guernsey, and inquiries were made of him by Shotwell in reference to the party making the application previous to sending the draft. If we assume that the real name of the party who indorsed the draft and obtained payment thereof from the National Bank was Daniel Guernsey, although not the Daniel Guernsey who owned the real estate described in the mortgages, the case is very similar to *Maloney v. Clark*, 6 Kas. 82. If, however, it be conceded that the real name of the party who executed the notes and mortgages and indorsed the draft is not Daniel Guernsey, a somewhat different question is presented, but a like result follows; and therefore the judgment is erroneous, for the reason that it is not sustained by the findings of fact of the trial

court, and is contrary to the law which is applicable thereto. After Shotwell had obtained the draft from the Exchange Bank he delivered it to his agent, Lobdell, to be sent to the party executing the notes and mortgages, under the belief that such party was the Daniel Guernsey who owned the real estate described therein. This belief was induced by the letters written by the person obtaining the draft and the application he had made for the loan. Lobdell sent the draft to the address of Daniel Guernsey, at Florence, through the mail, and in sending the same he intended that the person who executed the notes and mortgages should receive it, then believing such person was the real Daniel Guernsey. Therefore it appears that Shotwell and Lobdell thought the person to whom they sent the draft was the Daniel Guernsey who owned the quarter-section of land upon which the loan was placed by them.

The case of *Robertson v. Coleman*, N. E. Rep., (S. C. of Mass.,) vol. 4, No. 7, p. 619, is an authority directly in point. There, a thief had stolen a team of horses. He went to Boston, and registered his name at the Metropolitan Hotel as Charles Barney. There was living at Swanzey, Mass., a reliable and responsible man of that name. The thief turned the stolen team over to a firm of auctioneers to sell for him, giving his name as Charles Barney. The auctioneers sold the team, and after deducting their commission, gave the thief, calling himself Charles Barney, a check for the balance of the proceeds, the check being payable to the order of Charles Barney. The thief indorsed the check in blank with the name of Charles Barney, and disposed of it to the proprietor of the hotel where he was stopping. Subsequently the auctioneers learned that the team of horses had been stolen, that they had received them from the thief, and that his true name was not Charles Barney. Upon being notified by the auctioneers, the bank upon which the check was drawn refused to pay it. The holder brought suit, and recovered. Judge Field, in delivering the opinion in that case, said:

"The defendants, for a valuable consideration, gave the check to a person who said his name was Charles Barney, and

whose name they believed to be Charles Barney, and they made it payable to the order of Charles Barney, intending thereby the person to whom they gave the check. The plaintiff received this check for a valuable consideration, in good faith, from the same person, whom he believed to be Charles Barney, and who indorsed the check by that name. It appears that the defendants thought the person to whom they gave the check was Charles Barney, of Swanzey, a person in existence.

"It is clear, from these facts, that although the defendants may have been mistaken in the sort of man, the person they dealt with was the person intended by them as the payee of the check designated by the name he was called in the transaction, and that his indorsement of it was the indorsement of the payee of the check by that name. The contract of the defendants was to pay the amount of the check to this person or his order, and he has ordered it paid to the plaintiff. If this person obtained the check from the defendants by fraudulent representations, the plaintiff took it in good faith and for value."

So, in this case, Shotwell, for the notes and mortgages received by him, sent the draft to a person who said his name was Daniel Guernsey, and whose name Shotwell believed to be Daniel Guernsey, and Shotwell made the draft payable to the order of Daniel Guernsey, intending thereby the person to whom he sent the draft. The National Bank of Emporia received this draft for a valuable consideration in good faith from the same person whom the bank believed to be Daniel Guernsey, and who indorsed the draft by that name. When the holder of the draft presented it to the National Bank for the purpose of having it cashed, he stated that he was the Daniel Guernsey who was named in the draft as the payee thereof, and that the draft had been sent him for the notes and mortgages which he had delivered to Shotwell. Harvey, who identified the holder of the draft at the bank, stated to the cashier that he knew that such holder was Daniel Guernsey "from having knowledge of the fact that this man had executed certain notes and mortgages and delivered them to Shotwell for a loan." This is not like a case where a draft falls into the hands of the person by theft, for which the party sending is not responsible. It appears that Shotwell thought

the person to whom the draft was sent was the real Daniel Guernsey who owned the land in Butler county, and the false Daniel Guernsey did not obtain the letter sent him containing the draft by theft from the mail. Shotwell and Lobdell dealt with the false Daniel Guernsey as though he were the real Daniel Guernsey. Such person, it is true, obtained the draft from Shotwell by fraudulent letters and representations, but the National Bank is not responsible for the letters and representations of the false Daniel Guernsey, and as it took the draft in good faith and for value, it cannot be holden for the conversion of it, nor is it liable for the return of the money which it paid to the holder thereof upon his indorsement. The National Bank of Emporia paid the draft to the person to whom it was sent by Shotwell, and such person received the money from the bank thereon.

<div style="margin-left:2em;font-size:smaller">Person personating another; indorsement of draft; mistake; liability.</div>

Counsel for Shotwell claims that the National Bank did not use sufficient care and diligence in having the payee of the draft identified. This is not important, under the circumstances presented. The vital point in this case is, that Shotwell intended the draft to be sent to the party executing the notes and mortgages, and intended it to be paid to the person to whom he sent it and whom he designated by the name of Daniel Guernsey, because that was the name which he assumed in executing the notes and mortgages; and therefore the National Bank is protected in paying the draft to the very person whom Shotwell intended to designate by the name of Daniel Guernsey. Counsel also comments upon the fact that he refused to send currency to Florence, as requested, but sent, instead, the draft, payable to the order of Daniel Guernsey. If it were not for the other facts, this finding might tend to show caution and prudence on the part of Shotwell, but as all of the findings must be considered together, it may be that Shotwell "preferred to send the money in the way of a draft" as a matter of convenience only.

Counsel for Shotwell claims that *Dodge v. Bank*, 30 Ohio St. 111, is decisive in favor of his client. The court in that

case recognized the exact ruling and principle decided in this, but refused to apply it to that case, because the facts did not seem to warrant its application. The court said in that case that the bank paying the check upon the forged indorsement "had the right to show, if it could, that the person to whom the check was delivered was in fact the person whom the drawer intended to designate by the name of Frederick B. Dodge." In that case the drawer of the check refused to recognize the person presenting the voucher for which the check was given as the owner, without proof of identity, and for that reason made the check payable to the order of Dodge, the owner of the voucher. In this case the draft was sent to a false Daniel Guernsey, under the belief that he was the real Daniel Guernsey, and it was the intention of Shotwell and his agent, Lobdell, that the person who had executed the notes and mortgages should receive the draft sent by them.

It was said in argument that the trial court decided this case upon the authority of *Kohn v. Watkins*, 26 Kas. 691. That case is no authority for the decision. There, the draft was sent by Watkins to his correspondent, McLain, to be delivered to the payee thereof, Michael A. Becker. McLain forged the name of Becker upon the draft, then indorsed his own name thereon and negotiated the same. The draft was never delivered as Watkins had given instructions. He never intended it to be paid to McLain, to whom it was sent. McLain, the correspondent, was solely responsible for the fictitious application and the forgery. It is true that there is some resemblance between the case at bar and the cases of *Dodge v. Bank* and *Kohn v. Watkins*, yet an examination of these cases shows a fine distinction in each, and such a distinction that neither of the latter cases controls the decision of the former.

Upon the findings of fact of the trial court, the judgment must be reversed, and the cause will be remanded with the direction for the court below to render judgment in favor of the plaintiff in error.

All the Justices concurring.