CRIPPEN, LAWRENCE & Co., Appellants, v. THE AMERICAN NATIONAL BANK OF KANSAS CITY, MISSOURI, Respondent.

Kansas City Court of Appeals, December 5, 1892.

1. **Bills and Notes**: DRAWER OR INDORSER'S ORDER: PAYEE: SWINDLER: PAYOR. P. having the same name as the owner of certain land

made application to plaintiffs for a loan, filling out and signing their blank application, and on the approval of the application by plaintiffs after certain investigations of the matter he executed the bond, coupons and mortgage forwarded to him by plaintiffs and returned them. They took no steps to identify him as the owner of the land, but assumed he was such owner. Plaintiffs through the same agents through which the application, etc., had passed forwarded their draft on the defendant bank to P., who being identified only as the maker of the bond and mortgage received the cash on the draft from a Kansas bank which collected it from the defendant. It was the intention of the plaintiffs and their agents that the party making the application should get the money. P. was not the owner of the land, and the owner knew nothing of the matter. *Held*, plaintiffs cannot recover of the defendant bank the money paid on said draft.

2. ———: FRAUD: TWO INNOCENT PARTIES: SCIENTER. When both parties to a transaction are innocent, and the loss must fall upon one, it should be upon the one who in law most essentially facilitated the fraud; where one is bound to know and act upon his own knowledge, and the other has no means of knowledge, there is no reason in burdening the latter with the loss in exoneration of the former; if both are equally innocent and equally ignorant, the loss should remain where the chances of business have placed it.

3. Banks and Banking: CUSTOMER'S CHECKS: INDORSEMENT: CASE DISTINGUISHED. A banker's duty is to pay the checks and bills of customers drawn payable to order to the person who becomes holder by genuine indorsement, but he cannot charge his customer with payments made otherwise. The draft in this case bore the genuine indorsement of the person to whom the loan was made, and for whom the draft was intended; and the case is distinguishable from the case of a draft accidentally falling into the hands of a person not entitled thereto or of a stolen draft.

*Appeal from the Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

AFFIRMED.

*Beardsley & Gregory*, for appellants.

(1) The court will in this case, as a matter of law, say whether or not, under all of the facts, the defendant bank is liable. *Bricker v. Bank*, 18 Pac. Rep. 43. (2) The duty of a banker is to pay the checks and

bills of his customers, drawn payable to order, to the person who becomes holder by a genuine indorsement, and he cannot charge him with payments made otherwise, unless the circumstances amount to a direction from the customer to the banker to pay the paper without reference to the genuineness of the indorsement. *Dodge v. Bank*, 20 Ohio St. 234; *Dodge v. Bank*, 30 Ohio St. 1; *Armstrong v. Bank*, 46 Ohio St. 512; *Graves v. Bank*, 17 N. Y. 205; *Kohn v. Watkins*, 26 Kan. 691; *Dodge v. Bank*, 30 Ohio St. 1; *Armstrong v. Bank*, 46 Ohio St. 512; *Roberts v. Tucker*, 16 Q. B. 560. (3) The check was not drawn on the bank at Arkansas City. It was under no obligation to pay the same. It placed confidence in the identification made it. It might have withheld payment; or, choosing to pay it, did so at its peril, and must sustain whatever loss ensued. Where a person has a safe way and abandons it for one of uncertainty, he can blame no one but himself if he meets with misfortune. *Armstrong v. Bank*, 46 Ohio St. 512. It is the privilege of the drawer of a check to make the same payable to the order of a particular person, and devolves on the bank the duty of paying orders on a genuine indorsement. *Shipman v: Bank*, 27 N. E. Rep. (N. Y.) 371; *Dodge v. Bank*, 20 Ohio St. 234; *Crawford v. Bank*, 100 N. Y. 53. (4) If it becomes necessary to consider the question of negligence of the plaintiffs in this case, there is clearly no evidence against them.

*Karnes, Holmes & Krauthoff* with *Warner, Dean & Hagerman,* for respondent.

Smith, P. J.—This was an action brought by the plaintiffs, partners, against the defendant bank on a bill of exchange drawn by the Exchange Bank of

Lyons, Kansas, on the defendant bank in favor of R. M. Henderson for $1,282.95.

The case was tried before the court sitting as a jury. No objection appears to have been made to the admission or exclusion of evidence, nor were there any instructions asked or given. The finding and judgment of the court were for the defendant. Plaintiffs appeal. The undisputed evidence in the case shows that in April, 1889, a party assuming to be P. W. Pool applied for a loan upon certain property in Rice county, Kansas, addressing his request to Henderson, a loan agent at Lyons, Kansas. The latter transferred the letter of application to Godshalk, who concluded to place the same with Crippen, Lawrence & Co., money-lenders at Salina, Kansas, and to that end delivered to Henderson one of the former applications prescribed by Crippen, Lawrence & Co. for use in such cases. Henderson sent this instrument to his correspondent, who filled it up, signed it and returned it to him. Henderson then delivered it to Godshalk, who thereupon made an "examiner's report" upon another blank prescribed by the plaintiffs. These two papers were sent to the plaintiffs at Salina, who thereupon caused the property to be investigated and appraised by one Hilton, employed for that purpose. Upon receiving his report the plaintiffs agreed to make the loan, prepared the bond and mortgage to evidence the same, together with an order to be signed by the borrower, directing the plaintiffs to pay the money to Godshalk. Godshalk delivered this order, the bond and the mortgage to Henderson, who forwarded them to the applicant at Arkansas City, where they were executed, and thereupon returned to Henderson. Henderson delivered them to Godshalk, who forwarded them to plaintiffs. The plaintiffs thereupon drew a check, with which they

bought a draft on New York in favor of Godshalk. A letter was read transmitting the papers to Godshalk for execution by Pool, and another letter in which Godshalk returned the papers as having been executed by Pool. Godshalk deposited the draft sent him to his own credit in the bank of Lyons, and thereupon drew a check for a smaller amount in favor of Henderson. Henderson collected the amount of Godshalk's check, and with its proceeds bought a draft from the Lyons Exchange Bank (a different banking institution) drawn on the defendant. Henderson sent this draft to Arkansas City to the same person who had first applied for the loan, who had next signed the formal application, then the bond, mortgage and order to pay to Godshalk, who had acknowledged the mortgage, and who was the only party with whom any transaction had been had. This person indorsed the draft to the First National Bank of Arkansas City, Kansas. He was identified to the bank by one Bonsall, who said to the cashier: "Here is a man that I am not personally acquainted with, but he executed a note and mortgage before me a few days ago, and here is a draft for the amount of the loan."

The last-named bank indorsed the draft to the Citizens' National Bank, of Kansas City, Missouri, to which bank it was paid through the clearing house of Kansas City, Missouri. The defendant thereupon charged up the account of the Lyons Exchange Bank with the amount of said draft. It further appears from the evidence that all the parties to the original transaction intended the proceeds of the loan for the same party who made the application, and that none of them intended it for any other person. It is equally clear that they all supposed the applicant to be the Pool who owned the land, but there was nothing in the check which the plaintiffs drew in payment of the loan or in

any indorsement thereon, or in the face of the draft in question, or any indorsement thereon, which restricted the payment of either to the particular Pool who owned the land. This is made to appear quite clearly from the testimony of all the witnesses. *First.* Crippen testified that he supposed the party to whom the money was sent was the party who owned the land, and supposed the party who owned the land had made the application. *Second.* Putnam, one of the plaintiffs, testified that he did not intend that one man should make the application and another get the money, and supposed at the time the money was sent that the applicant would ultimately receive it. *Third.* Ferlin, plaintiffs' clerk, testified that he was the clerk who closed up the transaction on behalf of the plaintiffs, and that he intended that the money should go to Godshalk. *Fourth.* Godshalk testified that on the receipt of the money he paid the same to Henderson for the applicant. *Fifth.* Henderson testified that in all the transactions he had he dealt alone with the party who had first corresponded with him, and mailed the draft in suit to the person who had signed and executed the papers signed "P. W. Pool."

The plaintiffs took no steps to identify the applicant for the loan as the owner of the land, but assumed that he was such owner. They knew that a person was at Arkansas City acting under the name of P. W. Pool, and that he was receiving mail as such. They took it for granted he was the owner of the land, and sent him a draft. The real owner of the land had nothing to do with the transaction.

The question that is now presented for our decision is, whether or not the consequences of the plaintiffs' erroneous or mistaken assumption of the fact, that the person who applied for and to whom the loan was

made and the draft was sent therefor was P. W. Pool who owned the land mortgaged to secure the loan, shall fall upon the plaintiffs or the defendant bank.

The facts in the case of *Emporia Nat. Bank v. Shotwell*, 35 Kan. 360, were quite analogous to those of the case at bar. There one Daniel Guemsey was the owner of a tract of land in Butler county, in the state of Kansas, on which he formerly resided, but at the time of the transaction which gave rise to the suit he lived in the state of Iowa. An unknown person assuming the name of Daniel Guemsey obtained a loan from Shotwell upon the Guemsey land, and executed his notes and a mortgage for the loan in the name of Daniel Guemsey. Shotwell sent the amount of the loan by draft through the mail to the person executing the notes and mortgage who signed his name as Daniel Guemsey, and whose name he believed to be Daniel Guemsey, and made the draft payable to the order of Daniel Guemsey intending thereby the person to whom he sent the draft. The bank received the draft for a valuable consideration in good faith from the same person to whom it was sent, whom the bank believed to be Daniel Guemsey, and who indorsed the draft by that name.

On this state of facts it was held by the Kansas court that, although Shotwell was mistaken and deceived in the transaction, *the person he dealt with was the person intended by him as the payee of the draft designated by the name that he assumed in obtaining, and that his indorsement of it was the indorsement of the payee of the draft by that name*, and that, as the bank took the draft in good faith for value, Shotwell could not recover his loss from the bank.

*Maloney v. Clark*, 6 Kan. 82, was where a party employed an attorney to write a letter for him to a person whom he claimed as his brother, and asked of

such that he should send money for the use of such party. In answer to such letter the person so applied to sent a draft which was received by the attorney for the purpose of delivery to his employer, which draft was made payable to the order of his employer under the name by which he had been known to the attorney, and in which the application for the money had been made. The party sending the draft acted under the belief that he was sending money to his brother for his use which it was his intention to do. It turned out the party who had applied for the money was not his brother at all. The party to whom the draft was thus sent, and to whose order made payable, sold it to a banker for value in the due course of business upon identification of the attorney who wrote the letter for the money in the first instance. It was held that the mistake made, by which the money went to a party other than was intended, was the mistake of the sender, and that the loss of the latter could not be visited on the bank, since it was guilty of no negligence under the circumstances.

*United States v. Bank*, 45 Fed. Rep. 163, was a case where the constitutive facts were not materially different from those here, and it was declared that a bank that has paid a check on a forged indorsement is not responsible therefor to the drawer when the forger was identified to the bank by one who believed him the payee, and was in fact the person to whom the drawer had delivered the check.

The very recent case of *Feore v. Ladd*, decided by the supreme court of Oregon, reported in 29 Pac. Rep. 435, recognizes and applies the principles enunciated in the preceding referred to cases.

In *Wilson v. Express Co.*, 27 Mo. App. 360, and 43 Mo. App. 659, it was held that where two persons of the same name live in the same town, and one of

them orders goods from a merchant at a distance, and the carrier delivers the goods to the person who really had made the order, the carrier is not held responsible simply because the consignor thought the order was from the other of the two persons. If the name used was assumed by a swindler the carrier would not be liable in the absence of negligence in the delivery, or unless proper care on its part would have led to the discovery of the fraud. Similar rulings have been elsewhere. *Samuel v. Chuhcy,* 135 Mass. 278; *Robertson v. Coleman,* 141 Mass. 231; *Gifford v. Bank,* 21 Atl. Rep. 340. It has been ruled, too, that when both parties to a transaction are innocent, and the loss must fall upon one, it should be upon the one who in law most essentially facilitated the fraud. *Stout v. Benoist,* 39 Mo. 281. And so it has been held in respect to two persons equally innocent, where one is bound to know and act upon his own knowledge, and the other has no means of knowledge, there is no reason for burdening the latter with the loss in exoneration of the former, or, if both are equally innocent and equally ignorant, the loss should remain where the chances of business have placed it. *United States v. Bank, supra; Bank v. Bank,* 17 Mass. 33; *Bank v. Bank,* 10 Wheat. 333; *Price v. Neal,* 3 Burrows, 1355. In the last-cited case, Lord MANSFIELD used this language: "It is a misfortune which has happened without the defendant's fault or neglect. If there was no neglect in the plaintiff, yet there is no reason to throw off the loss from one innocent man upon another innocent man. *But in this case, if there was any fault or negligence in anyone,* it certainly was in the plaintiff, and not in the defendant."

According to the principles announced in the foregoing authorities if, as must be conceded was the case, an unknown person assuming the name of P. W. Pool,

obtained a loan from the plaintiffs upon the Pool land and executed his notes and a mortgage for the loan in the name of P. W. Pool, and the plaintiffs sent the amount of the loan by draft through the mail to the person executing the notes and mortgage, who represented his name to be P. W. Pool, and whose name plaintiffs believed to be P. W. Pool, indorsing the draft and thereby directing the defendant bank to pay the same to P. W. Pool or order, intending thereby the person to whom the draft was sent, and the latter person indorsed it by the name in which it was indorsed and sent to him, and the defendant bank in good faith paid the same in the usual course of business, the plaintiffs cannot recover though they were mistaken and deceived in the transaction. The person they dealt with was the person intended by them as indorsee of the draft designated by the name that he assumed in obtaining the loan, and his indorsement of it was the indorsement of the indorsee of the draft by that name, and especially so in the absence of negligence, or unless a want of proper care on the part of the defendant bank would have led to a discovery of the deceit, of which there is not the slightest evidence.

If the plaintiffs, or their agents for them, before closing the loan, had exercised the precaution dictated by ordinary prudence in such cases by instituting an inquiry as to whether the person who had applied for the loan under the name of P. W. Pool was the Pool who really owned the land, they would not have fallen the easy victim of the swindler that they did. It was an easy matter to have required of the applicant some satisfactory proof of his identity. They made no inquiry of the brother-in-law of the Pool who owned the land, who was the tenant of the latter. They did not inquire whether the owner of the land had removed from Oklahoma to Arkansas City, or whether the sig-

nature to the notes, mortgage and letters was his, but on the contrary they negligently assumed that the applicant for the loan was the owner of the land. The plaintiffs by their negligence facilitated the fraud.

There is no pretense but that the defendant bank was innocent and ignorant of the transaction constituting the fraud. Who ought under such conditions to suffer, the imprudent plaintiffs, or the defendant bank who paid out the money as directed by the plaintiffs' indorsement on the draft? Shall the plaintiffs profit by their own imprudence and disregard of the precautions that an ordinarily prudent business man would have observed under like circumstances? Shall they be allowed to visit their sin of omission upon the innocent and unoffending defendant bank? We think not.

The rule is undeniably true that it is the duty of a banker to pay the checks and bills of customers drawn payable to order to the person who becomes holder by a genuine indorsement, and he cannot charge him with payments made otherwise, unless the circumstances amount to a direction from the customer to the banker to pay the paper without reference to the genuineness of the indorsement. *Dodge v. Bank*, 20 Ohio St. 234; *Armstrong v. Bank*, 46 Ohio St. 512. But in the case under consideration the draft was indorsed by the plaintiffs' agent to the person calling himself Pool, at Arkansas City, and by the latter indorsed to the bank at Arkansas City. The indorsement was the genuine indorsement of the person to whom the loan had been made, and for whom the draft was intended. The case is distinguishable from that where a draft by accident falls into the hands of a person not entitled thereto for which the injured party is not responsible. In such case the injured party being in no fault might be entitled to relief against the purchaser of the

stolen draft (*Maloney v. Clark*, 6 Kan. 82); but in this case the draft was not stolen, but was indorsed and sent to the very person who received and negotiated it. So the rule, which requires a bank to pay checks and bills drawn by its customers payable to order to the person who becomes holder by a genuine indorsement, is wholly inapplicable to a case of this kind. We think that the loss which was occasioned by the fraud of the Arkansas City swindler must logically and justly be cast upon the plaintiffs, but for whose negligence it would not have likely happened.

We can find no fault with the conclusion reached by the trial court. It results the judgment must be affirmed. All concur.