## TOWNSEND, OLDHAM & CO. v. CONTINENTAL STATE BANK OF GORMAN. (No. 8206.)

(Court of Civil Appeals of Texas. Ft. Worth. May 29, 1915. Rehearing Denied July 3, 1915.)

BANKS AND BANKING �köö138—CHECKS—PAYMENT OF.

A purchaser of cotton which had been stolen gave the vendor a check. The bank on which the check was drawn cashed it on presentation by the intended payee, although the payee's indorsement did not exactly correspond with his name as written in the check. Held that, though the bank might have been guilty of negligence in paying the check as it did, yet, as the check was paid to the one to whom plaintiff intended it to be paid, the maker could not recover against the bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. ⊫ 138.]

Appeal from Eastland County Court; E. A. Hill, Judge.

Action by Townsend, Oldham & Co. against the Continental State Bank of Gorman. From a judgment for defendant, plaintiff appeals. Affirmed.

J. R. Stubblefield, of Eastland, and S. W. Bishop, of Gorman, for appellant. J. B. McIntire, of Gorman, for appellee.

BUCK, J. On November 12, 1913, an unknown man came into the store of Townsend, Oldham & Co. of Gorman, Tex., and presented a warehouse certificate for three bales of cotton, which cotton was purchased by Townsend, Oldham & Co., who gave their check on the Continental State Bank of Gorman in payment thereof in the sum of $199.10, payable to J. F. McClinton, or order. This check was presented to the said bank by the person to whom it was in fact given, and paid by said bank, the person presenting same indorsing thereon the name of J. F. Clinton. The bank charged said amount to the account of Townsend, Oldham & Co., they having on deposit an amount in excess of the sum named in said check. It later developed that the cot-

ton for which said warehouse certificate had been given had been stolen, two bales from A. C. Hill and the other from S. M. Fowler. The owners brought suit for possession thereof, and secured the same by writs of sequestration, but Townsend, Oldham & Co. replevied, and upon a suit between the latter as defendant and the owners as plaintiff, the plaintiff secured judgment in the justice court, and the defendant appealed to the county court. Townsend, Oldham & Co. then, on March 17, 1914, filed suit in the justice court against the Continental State Bank, alleging that the check given to J. F. McClinton was paid without indorsement of the payee named therein, but upon a forged indorsement, and that said bank was negligent in paying the check without the proper indorsement, and prayed for recovery of the amount of said check. The bank expressly denied negligence, and denied that it paid the check without requiring the indorsement of the payee named therein, and denied that the drawer had suffered loss thereby, and further alleged that the drawer had received a value consideration for said check, and was, therefore, estopped from recovering from defendant, etc. Apparently to meet this last given answer and plea, plaintiff, during the trial of this case, and under the advice of its attorney, filed in the county clerk's office, and with the papers of the two cases filed by the owners of the cotton, checks covering the amounts due them.

While the two names under which the unknown and elusive purloiner of the three bales of cotton was masquerading are given and spelt indifferently in the statement of facts, the pleadings, and the briefs as "Clenton" and "Clinton," "McClenton" and "McClinton," we have considered that the variance as to the vowel was not intentional on the part of the pleader or the witness, but was merely a typographical or clerical error, and that the only differences in the names so used was as to the presence or lack of the prefix "Mc."

This case was submitted on special issues and in answer thereto the jury found:

(1) That the defendant paid the amount of the check to the same person to whom the check was given.

(2) That the bank was negligent in cashing the check to the person to whom the proceeds were paid.

(3) That the name of the payee in the check and the name indorsed on the back of the check were not the same.

(4) That plaintiff did not authorize the bank to pay the check to J. F. Clinton.

(5) That plaintiff had deposited the value of the cotton with the county clerk for Hill and Fowler.

(6) That the name J. F. Clinton indorsed on the check was a fictitious name.

(7) That the person who indorsed the check was the same person to whom it was given.

(8) That the plaintiff, Townsend, Oldham

& Co., sold the cotton for which the check was given, and received the proceeds of sale.

(9) That plaintiff had not been compelled to part with the proceeds of the sale of cotton.

(10) That the man to whom the check was given and the man who indorsed the check were one and the same person.

(11) That plaintiff had not paid to Fowler and Hill the value of said cotton in money.

Upon these answers of the jury, the court entered judgment for the defendant bank, and the plaintiff appeals.

No attack is made by appellant upon the verdict, but the contention is made that the same does not sustain the judgment rendered. It is urged that had not the bank been negligent in paying the check upon the indorsement of a name different from that of the payee in the check, the fraudulent character of the thief's possession of the cotton would have been discovered, and the fact that the holder of the check, who presented it to the bank, had no legal right thereto, would have been disclosed, and plaintiff would not have been caused to suffer, and that such negligence on the part of the bank was the proximate cause of plaintiff's loss. In a concrete form, the question presented in appellant's six assignments is, will a bank which pays a check to one to whom it was given, and who was intended by the drawer to be the payee, but who in fact indorsed said check in a name different from that given as payee be liable for such payment? We think the question must be answered, under the facts of this case, in the negative. While the evidence discloses that the bank did not require an identification of the holder of the check, yet it is further evident, from the finding of the jury, which finding is amply supported by the evidence, that such holder was in fact the payee intended by the drawer.

Daniel on Negotiable Instruments, says (volume 2, p. 1873):

"Cases have arisen in which checks have been paid on forged indorsements made by the person to whom the drawer delivered the check, mistaking his identity for the one who is designated as payee; and when the person to whom the check has been delivered indorses it, and although it be a forgery of the name of the person whom the bank took him to be, it has been considered that the bank should be protected in paying the check, because the drawer was in fault in the first instance, and the person who forged the instrument was the person to whom the drawer actually delivered the instrument."

In Land, Title & Trust Co. v. Bank, 196 Pa. 230, 46 Atl. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717, where A. falsely representing himself as B., who was the owner of certain land, obtained a loan on a mortgage executed by him in B.'s name, the lender giving him a check therefor drawn to B. or order, and A. indorsed said check in B.'s name to a third party, who thereupon cashed the check upon his indorsement at the bank, it was held by the Supreme Court of Pennsylvania that the

drawer had no claim on the bank, neither did the bank on the third party, inasmuch as the check had been given to the person intended. See Bank v. Shotwell, 35 Kan. 360, 11 Pac. 141, 57 Am. Rep. 171, for a like holding upon a very similar state of facts. In the latter case, the court says:

"The vital point in this case is, that Shotwell intended the draft to be sent to the party executing the * * * mortgages, and intended it to be paid to the person to whom he sent it and whom he designated by the name of Daniel Guernsey, because that was the name which he assumed in executing the notes and mortgages; and therefore the National Bank is protected in paying the draft to the very person whom Shotwell intended to designate by the name of Daniel Guernsey."

In Maloney v. Clark, 6 Kan. 82, the plaintiff was induced to send a draft, drawn to the order of his brother, to a stranger, who, in the correspondence, had impersonated his brother. The stranger indorsed the name of the plaintiff's brother on the draft, and sold it to the defendants, who were bankers. It was held that, under the circumstances, plaintiff could not recover. See, also, Robertson v. Coleman, 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471. In U. S. v. Bank (C. C.) 45 Fed. 163, it was held that a bank was not liable for the payment of a check on a forged indorsement, where the person who committed the forgery and received the money was, in fact, the person to whom the drawer delivered the check, and whom he believed to be the payee named.

All of these decisions are upon the ground that the intention of the drawer of the check was that it should be paid to the person to whom he delivered it. In the instant case, the check was in fact paid to the person to whom it was delivered, and whom the drawer intended to be the payee. The fact that such person indorsed a name thereon different from that set out in the check as payee should not in our opinion change the rule laid down in the authorities cited. The rule that a bank at its peril pays a check drawn upon it to any one save the actual payee, or to his order, and that, if it mistakes the payee's identity, it is responsible for the payment to one not the payee named, is subject to the exception that if the payment is made to the one actually intended by the drawer as the payee, the payment is good. Daniel on Negotiable Instruments, vol. 2, § 1618. We do not understand the holding in Pickle v. Bank, 88 Tenn. 380, 12 S. W. 919, 7 L. R. A. 93, 17 Am. St. Rep. 900, opinion by Mr. Justice Lurton, and cited by appellant, to be in any sense a variance from this rule. In that case one Meese, owing plaintiff, drew a check in his favor for the amount. The statement of facts is not sufficient to show just how it was sent or delivered to the payee, if at all, but it is evident that the contention of plaintiff was that said check had been paid, if at all, by the bank to some unauthorized person, and that of the bank that it paid the check to the payee in person, but did not require his indorsement, because it was not its custom to require such indorsement when the payee presented it in person. Evidently the jury or trial court found in favor of plaintiff's contention on the facts, i. e., that the check had not been paid to him in person, and the Tennessee Supreme Court held, in so far as the question decided may have any relevance to the issue before us, that when a bank has paid a check drawn on it to one not the payee or indorsee it was liable.

Hence, it is our opinion that appellant's assignments should be overruled, and the judgment of the trial court affirmed, and it is so ordered.

Affirmed.