DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF UTAH.

FEBRUARY TERM, 1904.

HUGH HEAVY, Respondent, v. THE COMMERCIAL NATIONAL BANK OF OGDEN, UTAH, a Corporation, Appellant.

No. 1506. (75 Pac. 727.)

1. **Negotiable Instruments: Forgery: Negligence of Drawer: Bona Fide Holder: Liability.**
A bank mistakenly informed a person that a sum of money had been deposited to his credit, whereupon he wrote the bank, requesting a draft for the amount of the deposit, and on receipt of the draft he indorsed it, procuring the money. *Held* that his indorsement did not amount to a forgery.

2. **Same.**
A bank, having received a deposit to the credit of a certain person, mistakenly wrote another person that a deposit had been made to his credit, and he immediately showed the letter to plaintiff, who had known him for over two years, and wrote requesting a draft for the amount of deposit, which was sent, and he indorsed it to plaintiff, who paid

222

him the amount thereof.  *Held* that, as between plaintiff
and the bank, the latter was liable for the loss, even if the
indorsement was a forgery.

(Decided February 8, 1904.)

Appeal from the Second District Court, Weber County.
—*Hon. H. H. Rolapp,* Judge.

Action on a draft.  From a judgment in favor of
the plaintiff, the defendant appealed.

AFFIRMED.

*Messrs. Heywood & McCormick* for appellant.

That the forgery was committed by a person hav-
ing the same name as the genuine payee makes no dif-
ference.  It is the signature of the genuine person that
transfers the title.  The mere fact that another person
may have the same name gives him no power to make
the transfer and the signature of such a person is just as
much a forgery as if the names had been different.
Third Nat'l Bank v. Merchants' Nat'l Bank, 27 N. Y.
Supplm't on p. 1072.
By an Illinois court it is said:
If an endorsement made by a person who is not the
real payee, is made by such person, with knowledge that
he is not the real payee, with intent to perpetrate a
fraud, his endorsement can not be regarded otherwise
than as a forgery.  Beattie v. National Bank, 51 N. E.
603.
The rule is that a forged endorsement is a nullity,
and in law is the same as if there were no endorsement
whatever.  Myer v. Rosenhein & Co., 73 S. W. 1129.
The rightful possession of a check by no means car-
ries with it or implies a right to demand or receive the
payment of it without the genuine endorsement of the
person to whose order it is made payable.  Dodge v.
Bank, 30 Ohio State 6.

No title to the draft ever passed.    There was never a delivery of it.    The endorsement here was not made by the same James Malloy to whom the draft was made payable, and an endorsement by any other person gives no title whatever.    Palm v. Watt, 7 Hun 317; Graves v. Bank, 17 N. Y. (bottom of p. 208); Beattie v. Bank, 51 N. E. 603.    (See same case in Court of Appeals, 69 Ill. App. 632.)    Cochran v. Atkinson, 27 Kan. 733; Indiana Nat'l Bank v. Holtsclaw, 98 Ind. 85.

The court's especial attention is invited to the above case of Beattie v. Bank (69 Ill. App. 632), to show that the spurious Malloy having in his possession the letter from defendant bank, and also that there was a slight difference in the name would not alter the law of the case.    (See also, s. c., 51 N. E. 603.)

This defendant is now entitled to possession of the check or draft.    Garthwaite v. Bank, 66 Pac. 326; Rossi v. Bank, 71 Mo. App. 150.

The check belonged to the genuine Malloy.    Bank v. Holtsclaw, 98 Ind. 88; Graves v. Bank, 7 N. Y. 208.

The genuine Malloy stopped payment on the draft and afterwards received the cash, otherwise the draft, at his option, would have remained the property of the drawer bank defendant.    1 Hill 287.

A case against the drawer of a check would be no stronger than one against the drawee, for the payment by any endorsee or drawee upon a forged instrument would give no right against the drawer to retain the check, or to claim a reimbursement of the amount paid. Garthwaite v. Bank, 66 Pac. 327; Rogers v. Ware, 2 Neb. 29.

The drawee has an absolute guarantee from all endorsers that everything prior to his name is genuine. The drawer authorizes the drawee to pay only to the genuine payee or his order, and must, on return of the paper, seasonably pass upon whether it has been rightly paid or not.    In the case at bar the drawer did better, for payment was stopped before presentation to drawee. Plaintiff has pleaded no estoppel, nor has he pleaded negligence; and, as a matter of fact, it would not avail

him here had he pleaded either or both. Myer v. Rosenhein & Co., 73 S. W. 1129; Bank v. Bank, 27 N. Y. Supp. 1073; Rossi v. Bank, 71 Mo. App. 150; Bank of Commerce v. Ginocchio, 27 Mo. App. 661.

*Messrs. Henderson & MacMillan* for respondent.

"Where both are innocent and the loss must fall upon one, it should be upon the one, who, in law, most essentially facilitated the fraud. So in respect to two persons equally innocent, where one is bound to know and act upon his knowledge, and the other has no means of knowledge, there seems to be no reason for burdening the latter with loss in exoneration of the former." United States v. National Exchange Bank, 45 Federal 167; Lands, Title & Trust Co. v. Northwestern National Bank, 196 P. A. 230, 50 L. R. A. 75; Burrows v. Western Union Telegraph Co., 58 L. R. A. 433; Robertson v. Coleman, 4 N. E. 619; Tolman v. American National Bank, 52 L. R. A. 877; Emporia National Bank v. Shotwell, 11 Pac. 141.

Counsel for appellant say that we should have pleaded an estoppel. If they will point out to this court how we can plead an estoppel in a complaint, we will receive some information that we have never yet been cognizant of. An estoppel is usually pleaded in an answer, or if the facts in the complaint are such that it shows that the plaintiff should be estopped then an estoppel can be raised by demurrer. Bliss on Code Pleadings (2 Ed.), p. 364; 8 Encyclopedia of Pleading and Practice, p. 5; Stephen on Pleading (Heard), pp. 219 and 220; Gould's Pleading, p. 33.

### STATEMENT OF FACTS.

The transactions and circumstances out of which this action arose are as follows:

On November 10, 1902, one P. M. Cushnahan deposited with defendant bank the sum of $375 for the credit of one James Molloy. The same day the clerk of defendant bank wrote such information upon a

27 Utah 15

postal card addressed to James Molloy, Corinne, inclosed such postal card in an envelope, which he by mistake addressed to James Malloy, Denver, Colo. This card was received by one James Malloy, of Denver, who on November 17th, wrote defendant bank as follows:

"Denver, Colo., Nov. 17, 1902.
"T. D. Ryan, Cashier, Ogden, Utah.—Dear Sir: Your P. C. of the 10th, received. Please send me New York draft for the $375.00, less your charges.
"JAMES MALLOY.
"2219 Larimer Street, Denver, Colo."

Before sending the letter, Malloy showed it to plaintiff herein. Upon receipt of this letter, and believing it came from its depositor, in compliance therewith, defendant bank made out the following draft:

"No. 14,601.            "Commercial National Bank,
                        "Ogden, Utah, Nov. 20, 1902.

"Pay to the order of James Malloy, three hundred and seventy-four and sixty one-hundredths ($374.60) dollars.
"R. T. HUME, Cashier.
"To Kountze Bros., Bankers, New York."

This draft was enclosed with the following letter, which was forwarded to the address indicated in Malloy's letter of November 17th, which was plaintiff's place of business:

"Ogden, Utah, Nov. 20, 1902.
"Mr. James Malloy, Denver, Colo., 2219 Larimer St.—Dear Sir: Complying with yours of the 17th, we inclose New York draft for $374.60.
"Yours truly,
"T. D. RYAN, Cashier."

When the draft arrived in Denver, the letter in which it was inclosed was received by plaintiff and by him handed to James Malloy, whom he

had known for a couple of years. The letter was opened and the draft produced in plaintiff's presence, and thereupon James Malloy requested plaintiff to go with him to the bank and get the money, which plaintiff did. He identified him there as James Malloy, but was requested by the bank to place his (plaintiff's) name upon the back of the draft. This being done, the money was handed to plaintiff, and by him then and there delivered to Malloy. On November 20th James Molloy (the real party for whom the money was deposited) came into the bank, and it was then discovered that a mistake had been made, and the bank imposed upon by the Malloy letter of November 17th. The payment of the draft was immediately stopped in New York and an effort made to stop payment in Denver. When, in due course of business, the draft reached New York payment was refused, and the draft was protested, and returned to the Denver bank, which bank thereupon charged the amount of the draft against plaintiff's account. James Malloy, of Denver, disappeared immediately after the draft was cashed by the Denver bank. It appears that the defendant bank was well acquainted with the signature of James Molloy, of Corinne, both from seeing it upon his checks drawn against his deposits in the bank, and also as indorsed upon the back of dividend checks; he being a stockholder of the defendant bank. The account of James Molloy in the bank was carried in the name of James Malloy, but his signature and indorsements were always "James Molloy." The cause was tried by the court sitting without a jury. The court, after hearing the evidence, found the issues in favor of plaintiff, and rendered judgment in his behalf for the amount of the draft and interest thereon. Defendant bank appeals.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant contends that James Malloy, having procured the draft by artifice and fraud, acquired no right

or title to the same, and that his indorsement, which appellant insists was a forgery, could not and did not invest respondent with any legal right to recover on the instrument which Malloy himself did not possess, however innocent and free from blame the respondent may have been in the part he took in the transaction which eventually put him in possession of the draft. The rule contended for by appellant has been held to apply to cases in which the draft or bill has been lost or stolen, and then negotiated upon a forged indorsement, but the facts in this case do not bring it within that rule. · The draft in question was issued by appellant on Malloy's order, in his favor, and he is the man to whom it was sent. True, appellant at the time believed him to be the James Molloy, of Corinne, in whose favor the deposit was made against which the draft was supposed to have been drawn. The fact, however, remains that James Malloy, of Denver, is the man to whom the draft was sent. The record shows that when he negotiated the instrument he made no attempt to impersonate some other person, and he indorsed it by writing his own name on the back thereof without any intention that his signature should be taken for that of any other person. Under these circumstances, whatever crime Malloy may have committed by procuring and negotiating the draft in the manner he did, it is evident that his indorsement of it did not constitute forgery. 2 Bish. Crim. Law, 583. Even if Malloy's indorsement of the draft were construed to be a forgery, it could not in the face of the admitted facts in this case, and the great weight of judicial authority, affect the result. While there are a few cases which hold to the contrary, yet the majority of the decisions which we think contain the better reasoning hold that, where a drawer of a check, draft, or bill of exchange has been induced through fraud to deliver it to an impostor, believing him to be the person named in the check, draft, or bill of exchange, and the impostor negotiates the instrument, and receives payment thereon from an innocent

third party, as between the bona fide holder and drawer the latter must stand the loss.   Land, Title & Trust Co. v. No. Wes. Nat. Bank, (Pa.) 46 Atl. 420, 50 L. R. A. 75, 79 Am. St. Rep. 717; United States v. Nat. Ex. Bank, (C. C.) 45 Fed. 163; Robertson v. Coleman, 141 Mass. 231, 4 N. E. 619, 55 Am. Rep. 471; Crippen v. American Nat. Bank, 51 Mo. App. 508; Burrows v. Wes. Union Tel. Co. (Minn.), 90 N. W. 1111, 58 L. R. A. 433, 91 Am. St. Rep. 380; Emporia Nat. Bank v. Shotwell (Kan.), 11 Pac. 141, 57 Am. Rep. 171.

In this case it appears that appellant was well acquainted with the signature of James Molloy, of Corinne, who was both a depositor and a stockholder of defendant bank, and that his signature is easily distinguished from that of James Malloy, of Denver, Colo., to whom the draft was sent.   Not only is there a marked dissimilarity between the signatures of the two men, but their names are spelled differently.   Therefore it is manifest that, if appellant had exercised ordinary care and prudence at the time it received the order from James Malloy, of Denver, for the draft, it would not have been possible for him to have  perpetrated the fraud and procured the draft.   Not only did appellant fail to exercise ordinary business care on this occasion, but accompanied the draft with a letter which was sufficient to enable Malloy to dispel every doubt that the ordinary business man might entertain as to the regularity of the transaction that put him in possession of the instrument.   The rule is tersely, and, we think, correctly, stated in the case of Crippen v. American Nat. Bank, 51 Mo. App. 508, as follows:  "That when both parties to a transaction are innocent, and the loss must fall upon one, it should be upon the one who in law most facilitated the fraud."   Appellant, having issued and placed in the hands of an impostor its draft, a negotiable instrument that is accepted and exchanged with almost the same degree of confidence in commercial centers as are national bank notes, ought not to be permitted to repudiate it, and compel respondent, who hon-

estly and in good faith became an indorser, to stand the loss, which the record shows was made possible by appellant failing to observe the usual and customary business rules followed by banking houses and other commercial institutions in issuing this class of paper. As was said by the court in the case of Levy v. Bank of America, 13 Am. Rep. 124: "The plaintiffs can not successfully complain that the bank failed to protect them from the devices of a person who had with so little effort deceived and defrauded them. . . . It seems to us that they are endeavoring to make the bank repair a loss which they brought on themselves by their own carelessness." In this case it is not shown, nor is it claimed, that there was any fact or circumstance connected with the transaction by which respondent became the owner of the draft in question that would have justified the slightest suspicion on his part that Malloy obtained it by fraud; but, on the other land, he knew that Malloy had sent an order for the draft, which, when issued, was forwarded to respondent's place of business, the letter opened in his presence, and the draft produced and shown to him by a man whom he had known for two years. Under these circumstances respondent did no more in identifying Malloy and indorsing the draft than any business man of ordinary prudence would have been justified in doing under the same or similar circumstances.

We are of the opinion, and so hold, that appellant, by its own carelessness having furnished Malloy the means by which he perpetrated the fraud, ought to stand the loss occasioned thereby.

The judgment is affirmed, with costs.

BASKIN, C. J., and BARTCH, J., concur.