PENINSULAR STATE BANK OF DETROIT *v.* FIRST
NATIONAL BANK.

1. APPEAL AND ERROR—DIRECTED VERDICT.

Where both parties without reservation move for a directed verdict, neither may insist, in the Supreme Court, that the case should have gone to the jury.

2. SAME.

Where both parties without reservation moved for a directed verdict, the judgment entered on a directed verdict must be affirmed, on review, if right in law and supported by substantial evidence.

3. BANKS AND BANKING—DRAWEE BANK BOUND TO KNOW CUSTOMERS' SIGNATURES.

A drawee bank is bound to know the signatures of its customers, and therefore may not recover money it has paid to a *bona fide* holder of a check who had indorsed it, although the customer's name is forged.

4. SAME—FORGERY—ESTOPPEL—BONA FIDE INDORSER.

Where plaintiff bank received a letter purporting to be signed by a depositor, accompanied by the passbook and a withdrawal receipt also purporting to be signed by the depositor, and it issued its manager's check for the amount, which, with a letter, was forwarded by registered mail, and thereafter a party having in his possession the registered letter and the check and representing himself to be said depositor, presented them to a bank in another city for deposit, and the latter bank sent the check to a correspondent bank in the city where plaintiff is located, and, before paying out any money to said depositor, was assured by plaintiff's manager that it had paid the check, the latter is estopped from denying the genuineness of the depositor's signature and recovering the money paid to the correspondent bank, which was a *bona fide* holder.

5. APPEAL AND ERROR—DIRECTED VERDICT—QUESTIONS REVIEWABLE.

Where both parties, by unconditionally moving for a directed verdict, treated the case as presenting questions of law only, rulings on admissibility of testimony which only tended to

strengthen or weaken the case already made became unimportant, and therefore assignments of error based thereon are not considered on review.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted October 2, 1928. (Docket No. 3, Calendar No. 33,617.) Decided December 4, 1928.

Assumpsit by the Peninsular State Bank of Detroit against the First National Bank for the amount of a forged check. Judgment for defendant on a directed verdict. Plaintiff brings error. Affirmed.

*Donnelly, Donnelly, Munro & Dahling,* for appellant.

*Marvin J. Schaberg,* for appellee.

Paul Hunchik, on February 28, 1924, had on deposit in one of the branches of plaintiff bank on a savings passbook upwards of $2,700. On this date the branch received from Alamo, Kalamazoo county, a letter purporting to be signed by Hunchik asking that it send to him there the sum of $2,700; inclosed with the letter was the passbook and a withdrawal receipt for the amount also purporting to be signed by Hunchik. Plaintiff issued its manager's check for the amount payable to Hunchik, which, with a letter to him, was sent by registered mail to him at Alamo. On March 4th, a party having in his possession the registered letter and the manager's check presented himself at the Kalamazoo National Bank representing himself to be Hunchik, showed his registered letter and the check, and deposited the check with the bank; he withdrew no money that day. The check was sent to defendant bank, Detroit correspondent of the Kalamazoo bank, and was paid by the plaintiff through the clearing house. A few

days later the person who had represented himself as Hunchik to the Kalamazoo bank again appeared there and desired to withdraw most of the money from deposit. Before paying the money out, the vice-president of the Kalamazoo bank called up Mr. Fellrath, the manager of plaintiff's branch, who had signed and issued the check, and inquired if it had been paid, and, after waiting a few minutes for an examination, was informed that it had been. The Kalamazoo bank then permitted the withdrawal of $2,500. While it cannot be said to be without dispute, it is clearly established that the party claiming to be Hunchik was an imposter and his indorsement on the check was a forgery. Hunchik was an uneducated Russian, but could write his name and plaintiff has his signature card in its possession. The handwriting expert called by plaintiff testified that the signatures were not even a good imitation of Hunchik's handwriting. Before the forgery was discovered, defendant had paid the Kalamazoo bank the amount of the check. Both parties moved without reservation for a directed verdict, and one was directed for defendant.

FELLOWS, J. (*after stating the facts*). In view of the fact that each party seems to insist that if its motion for a directed verdict was refused, it should have been permitted to go to the jury, attention should be called to the rule that where both parties without reservation move for a directed verdict, neither can in this court insist that the case should have gone to the jury. If the court's decision is right in law and supported by substantial evidence, the judgment must be affirmed. *Hemphill* v. *Orloff*, 238 Mich. 508.

In the recent case of *American Surety Co.* v. *Savings Bank*, 242 Mich. 581, after a full examination of

the authorities, we concluded that the great majority of the American courts had adopted the doctrine of the early English case of *Price* v. *Neal,* 3 Burr. 1355, that the drawee bank was bound to know the signatures of its customers and could not recover the money it had paid to a *bona fide* holder of the check who had indorsed it. That case was decided after plaintiff's brief was filed in this court. If this were the case of a forged check purporting to be drawn by Hunchik on plaintiff bank and cashed by the Kalamazoo bank and defendant bank and indorsed by both of them, that case would require the affirmance of this judgment because on this record both banks were *bona fide* holders of the paper. Plaintiff's counsel evidently had the rule announced in that case in mind when they prepared their brief. They call attention to cases where that rule is recognized as applicable to checks drawn by the customer, but in which it is held to be inapplicable to cases where the indorsement of the customer is forged, as was the case with the manager's check in the case before us. Defendant's counsel counters with the citation of numerous cases sustaining its claim; indeed, the case has been well briefed by both sides. As we are satisfied that it is clearly established by this record that plaintiff is estopped from asserting the claim here made, we shall rest decision on that ground. The loss which occurred cannot be charged to any negligence on the part of the officers of the Kalamazoo bank. A stranger came to that bank as a prospective customer. He bore a letter written by plaintiff, sent by registered mail, and delivered to him as the true addressee by the post office officials. He had the manager's check issued by plaintiff, which he desired to deposit. The Kalamazoo bank paid him no money but took the check and forwarded it to Detroit for collection, for payment. When he

again appeared at the bank and desired to withdraw most of the money, the officer in charge of the matter declined to pay him until he first called up plaintiff's manager who issued the check, told him the party desired to withdraw the money, and inquired if the check had been honored, and, being informed that it had, paid out the money. Plaintiff had before it three signatures purporting to be the signatures of Paul Hunchik, but which, if plaintiff's handwriting expert is to be believed, were not even good imitations of his handwriting as appeared on the signature card in possession of plaintiff. Had the two signatures first sent to plaintiff bank, the signature to the letter and the one to the withdrawal receipt, been given careful comparison with the signature card, it is quite likely that the fraudulent scheme would have been nipped in the bud and no one would have suffered loss. Again, when the manager's check came in, and before any money had been paid out, had there been a careful comparison, it is quite likely plaintiff would have discovered the forgery and there would have been no loss. The language of the supreme court of Utah in *Heavy* v. *National Bank*, 27 Utah, 222 (75 Pac. 727), is quite applicable. It was there said:

"Therefore, it is manifest that, if appellant had exercised ordinary care and prudence at the time it received the order from James Malloy, of Denver, for the draft, it would not have been possible for him to have perpetrated the fraud and procured the draft. Not only did appellant fail to exercise ordinary business care on this occasion, but accompanied the draft with a letter which was sufficient to enable Malloy to dispel every doubt that the ordinary business man might entertain as to the regularity of the transaction that put him in possession of the instrument. The rule is tersely, and, we think, correctly,

stated in the case of *Crippen* v. *National Bank,* 51 Mo. App. 508, as follows: 'That when both parties to a transaction are innocent, and the loss must fall upon one, it should be upon the one who in law most facilitated the fraud.' Appellant, having issued and placed in the hands of an imposter its draft, a negotiable instrument that is accepted and exchanged with almost the same degree of confidence in commercial centers as are national bank notes, ought not to be permitted to repudiate it, and compel respondent, who honestly and in good faith became an indorser, to stand the loss, which the record shows was made possible by appellant failing to observe the usual and customary business rules followed by banking houses and other commercial institutions in issuing this class of paper. * * *

"We are of the opinion, and so hold, that appellant, by its own carelessness having furnished Malloy the means by which he perpetrated the fraud, ought to stand the loss occasioned thereby."

Attention is called to the rules of the clearing house association. We do not understand it to be claimed that they confer rights not accorded by the rules of law applicable to the case in hand. We discover nothing in their provisions which prevents the application by this court of the doctrine of estoppel.

There are assignments of error bearing on the admissibility of testimony. As both parties, by unconditionally moving for a directed verdict, treated the case as presenting questions of law only, rulings on admissibility of testimony which only tended to strengthen or weaken the case already made became unimportant.

The judgment will be affirmed.

NORTH, WIEST, CLARK, MCDONALD, POTTER, and SHARPE, JJ., concurred. FEAD, C. J., did not sit.