## UNITED STATES v. FIRST NAT. BANK OF PRAGUE, OKL., et al.

### No. 2347.

Circuit Court of Appeals, Tenth Circuit.

Dec. 12, 1941.

George H. McElroy, Asst. U. S. Atty., of Oklahoma City, Okl., and Paul A. Sweeney, of Washington, D. C., Atty., Department of Justice (Charles E. Dierker, U. S. Atty., of Oklahoma City, Okl., Francis M. Shea, Asst. Atty. Gen., and George F. Foley and Robert Kaplan, both of Washington, D. C., Attys., Department of Justice, on the brief), for appellant.

Maurice M. Thomas, of Oklahoma City, Okl. (J. B. Dudley and Dudley, Hyde, Duvall & Dudley, all of Oklahoma City, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The United States issued in due form an adjusted-service certificate to Edwin Waren, herein called the veteran. Sometime

in September or October, 1931, an individual, herein called the imposter, went to Prague, Oklahoma, and operated a small cafe until the latter part of December. To some people there he was known as Billie Dove and to others as Edwin Waren. He had the adjusted-service certificate referred to in his possession. Certain world war veterans introduced him to officers of the First National Bank of Prague as Edwin Waren, and he obtained from the bank a loan of about $100, pledging the certificate as security. On January 14, 1932, he applied in writing to the regional office of the Veterans' Administration in Oklahoma City for the full loan value of the certificate. The writing was a combination application and note, and was on a form apparently prepared by the Administration for use of veterans in seeking loans. The name and address of the applicant was given in the instrument as Edwin Waren, Prague, Oklahoma, % First National Bank. A blank certificate of identification was attached to the form. The president of the bank at Prague was also a notary public. Acting as notary public, he signed the certificate of identification in which he certified that the person applying for the loan evidenced by the note was known to him to be the veteran named in the adjusted-service certificate, and that the signature on the note was that of the veteran. The note and the adjusted-service certificate as pledged collateral were submitted to the Administration; and, on January 16, the special disbursing agent in Oklahoma City issued a check for the loan drawn on the Treasurer of the United States, payable to the order of Edwin Waren, % First National Bank of Prague, Oklahoma, in the sum of $778.50. The check was mailed accordingly and was delivered to the imposter. He endorsed the name Edwin Waren on it and negotiated it to the bank at Prague. The bank deducted $104 in payment of its note, delivered the balance of the proceeds to the imposter, placed its endorsement on the check, and forwarded it by mail to its correspondent the Tradesmens National Bank at Oklahoma City. The latter bank placed its endorsement upon it and presented it through banking channels to the Federal Reserve Bank, and it was paid by the Treasurer of the United States on January 23, 1932. The imposter left Prague on the day he received from the bank the balance of the proceeds of the loan made by the Administration, and was never there again. On January 18, 1932, four days after the imposter made application for the loan at Oklahoma City, the veteran submitted an affidavit to the Administration in the City of Washington, in which it was recited that in August, 1931, the certificate was stolen in Wyoming; and at the same time he made application for the issuance of a duplicate certificate, and sought a loan on it. The duplicate certificate was issued, the loan was granted and paid by check, and thereafter the balance due on the certificate was paid to the veteran. The Treasurer of the United States first learned in 1938 that the regional office of the Administration in Oklahoma City had dealt with an imposter, and that the endorsement on the check issued to him was not that of the veteran. Demand for return of the money paid on the check was refused, and the United States instituted this suit against both banks upon their respective guaranties of prior endorsements. The banks prevailed, and the United States appealed.

The check was issued and mailed in the regular course of business of the United States in dealing with veterans holding adjusted-service certificates and seeking loans upon them. The rights of the holder of such a check as against the United States are not different from those accorded by commercial practice to checks of private individuals. United States v. Guaranty Trust Co., 293 U.S. 340, 55 S.Ct. 221, 79 L.Ed. 415, 95 A.L.R. 651.

Section 11322, Oklahoma Statutes 1931, 48 Okl.St.Ann. § 43, provides that a forged or unauthorized signature to a negotiable instrument is wholly inoperative and confers no right of retention, discharge, or enforcement of payment, unless the party against whom it is sought to enforce such right is precluded from setting up the forgery or want of authority. The statute is substantially identical with section 23 of the Uniform Negotiable Instruments Act, and is merely declaratory of the common law.

The United States contends that the endorsement on the check by the imposter was a forgery, and that the two banks are therefore liable on their respective endorsements in each of which all prior endorsements were guaranteed. The imposter or fraudulent impersonation rule has been frequently considered in its application to a variety of facts. With few exceptions, it is held that the drawer of a

check, bill of exchange, or other negotiable instrument, cannot recover from an intermediary bank on its endorsement, or from the payee bank upon its payment, where the check, bill, or other instrument is drawn and delivered to an imposter under the mistaken belief on the part of the drawer that he is the person whose name he has assumed and to whose order the check, bill, or other instrument is made payable, and the intermediary bank acquires it from the imposter upon his endorsement thereon of the name of the payee, or the payee bank pays it upon such endorsement, as the 'case may be. Although not in full accord in respect of the reasons for their conclusion, most courts hold that while the drawer acts in the mistaken belief that the person with whom he deals either in person or by correspondence is the person whose name he has assumed and pretends to be, still it is the intent of the drawer to make the check, bill, or other instrument payable to the identical person with whom he deals and therefore to be paid on his endorsement; and that accordingly payment to him or his endorsee merely effectuates the intent of the drawer. Land Title & Trust Co. v. Northwestern National Bank, 196 Pa. 230, 46 A. 420, 50 L.R.A. 75, 79 Am.St.Rep. 717; Montgomery Garage Co. v. Manufacturers' Liability Insurance Co., 94 N.J.L. 152, 109 A. 296, 22 A.L.R. 1224; Hartford Accident & Indemnity Company v. Middletown National Bank, 126 Conn. 179, 10 A.2d 604; Robertson v. Coleman, 141 Mass. 231, 4 N.E. 619, 55 Am.Rep. 471; Meyer v. Indiana National Bank, 27 Ind. App. 354, 61 N.E. 596; McHenry v. Old Citizens' National Bank of Zanesville, 85 Ohio St. 203, 97 N.E. 395, 38 L.R. A.,N.S., 1111; Halsey v. Bank of New York & Trust Co., 270 N.Y. 134, 200 N.E. 671; Cohen v. Lincoln Savings Bank of Brooklyn, 275 N.Y. 399, 10 N.E.2d 457, 112 A.L.R. 1424; Hoffman v. American Exchange National Bank, 2 Neb.Unof. 217, 222, 96 N.W. 112; McCornack v. Central State Bank, 203 Iowa 833, 211 N.W. 542, 52 A.L.R. 1297; Emporia National Bank v. Shotwell, 35 Kan. 360, 11 P. 141, 57 Am. Rep. 171; Heavey v. Commercial National Bank, 27 Utah 222, 75 P. 727, 101 Am.St. Rep. 966; Jamieson & McFarland v. Heim, 43 Wash. 153, 86 P. 165; Uriola v. Twin Falls Bank & Trust Co., 37 Idaho 332, 215 P. 1080; Ryan v. Bank of Italy National Trust & Savings Ass'n, 106 Cal.App. 690, 289 P. 863; Townsend, Oldham & Company v. Continental State Bank of Gorman, Tex.Civ.App., 178 S.W. 564; Cureton v. Farmers' State Bank, 147 Ark. 312, 227 S.W. 423; Missouri Pac. R. Co. v. M. M. Cohn Co., 164 Ark. 335, 261 S.W. 895; Commercial Bank & Trust Co. v. Southern Industrial Banking Corporation, 16 Tenn. App. 141, 66 S.W.2d 209. And that general principle was quite recently applied in a case where an imposter in possession of an adjusted-service certificate filed in the name of the veteran an application for a loan on such certificate, obtained a check for such loan made payable to the veteran, endorsed the name of the veteran thereon, and delivered it to a merchant, receiving in exchange some merchandise and the balance in cash; the merchant endorsed and delivered it to a bank, the bank in turn endorsed and presented it to the Treasurer of the United States, and it was paid. The United States sued the bank on its endorsement. Recovery was denied. Security-First National Bank of Los Angeles v. United States, 9 Cir., 103 F.2d 188.

But, as between the United States and the bank at Prague, the imposter first established contact with the bank. The bank became satisfied that he was the veteran and made him a loan, taking the certificate as pledged security. After satisfying the bank in respect to his identity, after negotiating the loan, and after pledging the certificate, when he came to make application to the Administration and was faced with the necessity of establishing his identity to the satisfaction of the Administration, he went to the individual who was both president of the bank and a notary public. That individual signed the certificate appended to the note being given for the loan. He stated in the certificate that he knew the person applying for the loan to be the veteran named in the certificate, and that the signature on the note was that of such veteran. The certificate was made in the capacity of notary public, and the Administration did not have knowledge of the fact that the person making it was also president of the bank. But in addition to making the certificate for the intended purpose of giving assurance to the Administration that the applicant was the veteran, the bank released the certificate then held as collateral in order that it might be deposited with the Administration as security for the loan being sought; the certificate was attached to the note; and together the two were submitted to the Administration. The address

of the imposter was given as in care of the bank, the check promptly and directly found its way to the bank, and the loan of the bank was paid out of it. All of these facts and circumstances and the fair inferences from them, considered together, indicate too clearly for mistake that the bank had full knowledge that the person in Prague was applying to the Administration for the loan, that in order to obtain such loan it was necessary for him to establish to the satisfaction of the Administration his identity as the veteran, and that if and when the Administration became satisfied and the loan was made the note of the bank would be paid out of the proceeds; that the certificate of identification was made for the purpose of facilitating the making of the loan, and the certificate was released for the same purpose; and that in such manner the bank was acting in concert with such person in his effort to secure the loan. Thus the issuance and mailing of the check to the imposter was not the first act which made possible the loss. On the contrary, by first reposing confidence in him and by cooperating with him as indicated, the bank unwittingly contributed to the deception of the Administration in respect to the vital matter of identity; and such cooperation constituted the initial act which resulted in the imposter fraudulently obtaining money to which he was not entitled. The acts and conduct of the bank, without being so intended, facilitated the fraud and primarily made possible the loss. Stated otherwise, the bank unwittingly cooperated with the imposter in setting in motion the train of events which culminated in the loss. As to the liability of that bank on its endorsement, these facts and circumstances take the case out of the general fraudulent impersonation doctrine previously reviewed, and make applicable the well established rule that as between two innocent persons, both of whom are victims of fraud, the burden must fall upon the one whose negligence first facilitated and made possible the loss. Montgomery Garage Company v. Manufacturers' Liability Insurance Co., supra; Hartford Accident & Indemnity Co. v. Middletown National Bank, supra; McHenry v. Old Citizens' National Bank of Zanesville, supra; Peninsular State Bank of Detroit v. First National Bank of Detroit, 245 Mich. 179, 222 N.W. 157; Heavey v. Commercial National Bank, supra; Boatsman v. Stockmen's National Bank, 56 Colo. 495, 138 P. 764, 50 L.R.A.,N.S., 107; Milner v. First National Bank of Waynesboro, 38 Ga.App. 668, 145 S.E. 101; Cureton v. Farmers' State Bank, supra; Missouri Pac. R. Co. v. M. M. Cohn Company, supra; Commercial Bank & Trust Co. v. Southern Industrial Banking Corporation, supra; Central National Bank v. National Metropolitan Bank, 31 App.D.C. 391, 17 L.R.A.,N.S., 520; Arms & Drury v. Columbia Title Insurance Company, 62 App.D.C. 178, 65 F. 2d 811; Security-First National Bank of Los Angeles v. United States, supra.

■ Both banks pleaded the local statute of limitations, and laches. The check was issued, endorsed, and paid in 1932; and no demand for repayment was made until 1938. Ordinarily a right of action of the United States is not subject to a state statute of limitations. United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194; United States v. Nashville, Chattanooga & St. Louis Railway Company, 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81; Chesapeake & Delaware Canal Company v. United States, 250 U.S. 123, 39 S.Ct. 407, 63 L.Ed. 889; Guaranty Trust Co. v. United States, 304 U.S. 126, 58 S.Ct. 785, 82 L.Ed. 1224. And where the United States, acting in its governmental capacity, has the right to assert a claim, either by virtue of ownership from its inception or by acquisition, and exerts its right of assertion, it cannot be deemed to have abdicated its governmental authority in such manner as to become subject to a local statute imposing a limitation of time upon enforcement. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283. Nor is a cause of action asserted by the United States in such capacity subject to the defense of laches. United States v. Kirkpatrick, 9 Wheat. 720, 6 L.Ed. 199; United States v. Thompson, supra; United States v. Insley, 130 U.S. 263, 9 S.Ct. 485, 32 L.Ed. 968; Guaranty Trust Co. v. United States, supra.

The judgment is affirmed as to the appellee Tradesmens National Bank of Oklahoma City; as to the appellee First National Bank of Prague it is reversed and the cause remanded for further proceedings not inconsistent with the views herein expressed.